Argued and submitted January 8, reversed and remanded September 1, 2010

## KAIB'S ROVING R.PH. AGENCY, INC.,
*Plaintiff-Appellant,*

*v.*

## Zane E. SMITH
and RPH Relief, Inc.,
an Oregon corporation,
*Defendants-Respondents.*

Polk County Circuit Court
07P1380; A138175

239 P3d 247

Paul R.J. Connolly argued the cause for appellant. With him on the briefs were Kevin J. Jacoby and Tyler Malstrom, Certified Law Student.

Gregory Mark Abel argued the cause for respondents. On the brief was Jamie L. Hazlett.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

Plaintiff appeals the trial court's judgment dismissing this action for misappropriation of trade secrets, ORS 646.461 to 646.475, breach of contract, breach of an implied covenant of good faith and fair dealing, and unfair competition. Focusing exclusively on the trade secrets claim, the trial court determined that the items of information that defendants allegedly misappropriated were not, in fact, trade secrets as that term is defined by law. On that basis alone, the court granted defendants' motion for summary judgment as to all of plaintiff's claims. On appeal, plaintiff challenges that ruling and also asserts that the court abused its discretion in ruling on the summary judgment motion without first permitting plaintiff to complete discovery. We conclude that, because there are disputed issues of material fact, summary judgment was inappropriate. Accordingly, we reverse and remand.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to prevail as a matter of law. ORCP 47 C.

> "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

*Id.* "On review, we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the nonmoving party." *Becker v. Pacific Forest Industries, Inc.*, 229 Or App 112, 114, 211 P3d 284 (2009). From that perspective, the facts are as follows.

Plaintiff is a corporation located in Polk County that provides relief pharmacists for pharmacies in need of temporary assistance. Defendant Zane Smith (Smith) is a pharmacist; defendant RPH Relief, Inc., is a corporation located in southern Oregon that was formed by Smith in November 2006. Like plaintiff, RPH Relief provides pharmacies with relief pharmacists.

Smith contacted plaintiff in August 2006 and expressed interest in joining the company's roster of relief pharmacists. The company president spoke with him by telephone and told him about her business. Afterward, she sent him a packet of written materials that included a work agreement and information regarding the relief pharmacy business. She also added Smith to the company's referral list and began e-mailing him its "Current Work Available" information, which provides details regarding openings for relief pharmacists throughout the state. As part of the foregoing communications, plaintiff disclosed information to Smith that it contends is confidential and constitutes trade secrets. That information consists of the following:

"(1)   How the pharmacists can maintain independent contractor status. This information was relayed to Smith on the phone, by the agreement, by statements about maintaining separateness, by discussions about the Oregon Employment Department policy towards [plaintiff] and the significant litigation and costs of litigation that [plaintiff] experienced in maintaining the pharmacists' independent contractor status.

"(2)   The process by which customers refer openings to [plaintiff's] and the process [plaintiff] uses to inform [plaintiff's] relief pharmacists about available positions.

"(3)   The process by which [the] pharmacists receive priority for positions.

"(4)   The process by which [plaintiff] confirm[s] with customers that a particular relief pharmacist will be at their store at a date and time certain and the length of the shift.

"(5)   The customs and practices of each store in a chain and of each independent pharmacy, including the manager's specific requirements.

"(6)   Whether a store has technician assistance coverage or not.

"(7)   Whether the store has employees with allergies.

"(8)   The amount of internet prescriptions and the volume of walk-in business.

"(9)   Whether lunch time is paid for or not.

"(10) The amount of narcotic paperwork, which is highly complex and difficult for some pharmacists to prepare.

"(11) The store policy for paying for lodging for the relief pharmacists.

"(12) Whether and how much drive time is paid for.

"(13) The amount of customers' paperwork.

"(14) The billing rates paid by chains versus independent stores.

"(15) The store's billing cycles.

"(16) The profitability of the relief pharmacy business and prospects for the future.

"(17) The agreement between the pharmacy and [plaintiff]."

Eventually, in October 2006, Smith returned a signed work agreement to plaintiff. Among other things, the agreement contains the following provision: "I agree nor [*sic*] to disclose any confidential company information relating to [plaintiff's] method of doing business to any outside company or person." Before returning the agreement, Smith had not taken any of the positions listed on the "work available" e-mail listing he received from plaintiff; after returning the agreement, he accepted one position and worked a day as a relief pharmacist. Plaintiff took Smith off its e-mail list at the beginning of November 2006. Later in the same month, Smith filed Articles of Incorporation to form RPH Relief.

Plaintiff brought this action against defendants, alleging that defendants had misappropriated trade secrets, breached a contract with plaintiff by disclosing confidential information, breached the implied duty of good faith and fair dealing, and engaged in unfair competition. Plaintiff sought damages and an order enjoining defendants from continuing to operate a pharmacist referral service.

Defendants filed a motion for summary judgment asserting, among other things, that the items of information at issue were not "confidential company information" and did not qualify as trade secrets under the statutory definition:

" 'Trade secret' means information, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that:

"(a) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

"(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

ORS 646.461(4). In response, plaintiff explained how, in its view, the information at issue met that definition. It also maintained that the information was confidential and that there were issues of fact regarding its claims and, therefore, the case could not be decided on summary judgment. In addition to opposing the summary judgment motion on the merits, plaintiff argued that it had not yet been able to depose the two individuals whose affidavits had been submitted in support of defendants' motion and it was, therefore, unable to adequately defend itself. For that reason, it urged the court to either deny the motion or refrain from ruling on it until further discovery was completed.

The trial court granted summary judgment in favor of defendants, concluding that none of the information at issue could be considered a trade secret. The court's explanation of its ruling provided, *in toto*:

"I am not going to repeat the contents of the documents claimed to be 'trade secrets.' They are contained within the pleadings as well as in each of your memoranda. I do not find them to be unique. I agree with the defendant. The so-called 'trade secrets' is information which is either generally known in the relief pharmacist business or could be readily obtained by any relief pharmacist[ ]. Reorganizing and repackaging that information and calling it 'confidential' does not make public knowledge suddenly private."

The court did not mention plaintiff's other claims. Nonetheless, it subsequently entered a general judgment dismissing the entire case and, later, entered a supplemental judgment awarding defendants attorney fees.

Plaintiff's first assignment of error states, somewhat opaquely:

> "The trial court erred as a matter of law when it concluded that none of the plaintiff's categories of confidential information fits the statutory definition of 'trade secrets' because none was 'unique' and all were readily ascertainable through other means."

The argument that follows, as well as plaintiff's responses to questions from the bench at oral argument before this court, clarify that this assignment actually encompasses two separate arguments: first, that, by using the term "unique" and stating that the information could be readily obtained, the court implicitly adopted an erroneous interpretation of the term "trade secret" in ORS 646.461(4); and second, that, in any event, the court erred in concluding that there were no disputed issues of material fact. The second argument is also the focus of plaintiff's second assignment of error.

■      Regarding the first argument, plaintiff maintains that the court adopted the following definition of "trade secret": information that is "unique," that is, held only by the plaintiff and, further, is not readily ascertainable by the relevant public. We acknowledge that the court's letter opinion is terse and that it does contain the terms "unique" and "readily obtain[able]." If the court granted defendants' motion under the impression that, in all cases, information that consists entirely of publicly available material that is reorganized and repackaged cannot be a "trade secret" under ORS 646.461(4), that was error. The text of the statute is clear and unambiguous: a trade secret can be a "compilation" that "[d]erives independent economic value * * * from not being generally known to the public or to other persons who can obtain economic value from its * * * use." The subject of the verb phrase "derives independent economic value" is "compilation"; it is the compilation that must have independent value and not be generally known, not the individual items within the compilation. When someone expends considerable time, effort, and expense to compile information, that information in its compiled form can, in some circumstances, meet the statutory definition of a trade secret. *See Buffets, Inc. v. Klinke*, 73 F3d 965, 968 (9th Cir 1996) ("[t]rade

secrets frequently contain elements that by themselves may be in the public domain but together qualify as trade secrets") (internal quotation marks omitted); *IKON Office Solutions v. American Office,* 178 F Supp 2d 1154, 1167 (D Or 2001), *aff'd,* 61 F Appx 378 (9th Cir 2003) (list of customers can constitute a trade secret when considerable time and money has been expended to compile it).

We need not decide whether the court applied the correct definition, however, because, in any event, it erred with respect to the second aspect of plaintiff's argument: the absence of disputed material facts. To constitute a trade secret under ORS 646.461(4), information (including compilations) must both (1) gain value because it is not generally known and (2) be the subject of reasonable efforts to maintain that secrecy. Each of those determinations is made, not by reference to legal principles, but on the basis of the historical facts and circumstances presented: Is the information at issue generally known within the relevant community? Is it more valuable by virtue of not being generally known? What efforts were made to keep it secret? Were those efforts reasonable? *Et cetera.* The definition set forth in the statute itself therefore necessarily implies that whether information is or is not a trade secret is a question of fact. If facts and circumstances are presented to establish that the information derives economic value from not being generally known and is subject to reasonable efforts to maintain its secrecy, then the information is a trade secret within the meaning of the statute. As has been observed:

> "[A] trade secret is one of the most elusive and difficult concepts in the law to define. In many cases, the existence of a trade secret is not obvious; it requires an ad hoc evaluation of all the surrounding circumstances. For this reason, the question of whether certain information constitutes a trade secret ordinarily is best resolved by a fact finder after full presentation of evidence from each side."

*Learning Curve Toys, Inc. v. PlayWood Toys, Inc.,* 342 F3d 714, 723 (7th Cir 2003) (internal quotation marks and citation omitted); *see, e.g., Progressive Products, Inc. v. Swartz,* 41 Kan App 2d 745, 750, 205 P3d 766, 772 (2009) (existence of a trade secret is a question of fact); *Marine Pile Drivers, LLC v. Welco, Inc.,* 43-498, p 3 (La App 2 Cir 8/13/08), 988 So 2d

878, 881 (same); *MicroStrategy Inc. v. Li*, 268 Va 249, 264, 601 SE 2d 580, 589 (2004) (same); *Ovation Plumbing, Inc. v. Furton*, 33 P3d 1221, 1224 (Colo App 2001) (same); *but see Weins v. Sporleder*, 1997 SD 111, ¶ 14, 569 NW 2d 16, 20 (1997) (existence of a trade secret is a mixed question of law and fact).

Here, plaintiff submitted affidavits to the effect that some of the information was compiled and developed over a period of 20 years and that "it would take an average business person at least one year to develop similar data." Plaintiff's affidavits attest that the information at issue was specialized, confidential, and compiled as the result of much expense and many years' labor; that it was not generally known; and that it had independent economic value. Defendants, for their part, submitted an affidavit stating that much of the information that plaintiff claimed as trade secrets is "common knowledge in [the] industry" or "could be readily obtained by any relief pharmacist[.]" These conflicting affidavits reveal disputed fact issues.

At oral argument, defendants acknowledged that the record contained affidavits that presented disputed facts, but contended that the trial court correctly ruled that defendants' position was so obviously correct under the metric of "common sense" that no rational juror could find in plaintiff's favor. We agree that the existence of competing affidavits does not necessarily preclude summary judgment; thus, for example, no amount of affidavit attestation regarding the nonexistence of gravity could create a disputed issue of fact as to whether an object dropped from a height fell down or rose up. The issues in this case are not of that nature. For example, pharmacies' billing cycles are not indisputable, obvious, and commonly acknowledged, nor are pharmacies' volume of Internet and walk-in business.

In sum, the competing evidence on summary judgment establishes genuine issues of fact regarding whether the items of information at issue constitute trade secrets. Furthermore, it appears from the record that the trial court granted summary judgment on all of plaintiff's claims based solely on its determination that the information in question did not constitute trade secrets. Because we conclude that

summary judgment on that basis was inappropriate, we reverse and remand the judgment as to plaintiff's remaining claims as well.[1] Finally, because the case must be remanded in light of our determination that the trial court erred in granting the motion for summary judgment, we do not address whether the court abused its discretion in deciding the motion without allowing plaintiff to complete discovery.

Reversed and remanded.

---

[1] We express no opinion on whether plaintiff can properly bring a claim for unfair competition based on the facts alleged in this case. *But see Volt Services Group v. Adecco Employment Services*, 178 Or App 121, 135, 35 P3d 329 (2001), *rev den*, 333 Or 567 (2002) (A claim for "unfair competition is limited to misappropriation of a competitor's intellectual property, such as trade name or trade dress, and it requires a showing of likelihood of consumer confusion" and a trial court does not err in granting summary judgment on such a claim where the plaintiff does "not allege a likelihood of consumer confusion, nor * * * offer such evidence."); ORS 646.473(1) (The Uniform Trade Secrets Act "supersede[s] conflicting tort, restitution or other law[s] of Oregon providing civil remedies for misappropriation of a trade secret.").