Argued and submitted May 10, 2011, reversed in part and remanded for
proceedings consistent with this opinion December 19, 2012

PFIZER INC.,
*Plaintiff-Appellant,*

*v.*

OREGON DEPARTMENT OF JUSTICE,
acting by and through its Attorney General,
John Kroger,
*Defendant-Respondent.*

Marion County Circuit Court
08C25784; A144063

294 P3d 496

Joseph C. Guimond, Judge.

Adam B. Siegel, New York, argued the cause for appellant. On the opening brief were James E. Mountain, Jr., Jona J. Maukonen, and Harrang Long Gary Rudnick PC, and Michael J. Sandmire, Lori Irish Bauman, and Ater Wynne LLP. On the reply brief were Michael J. Sandmire, Lori Irish Bauman, and Ater Wynne LLP.

Stephanie L. Striffler, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

## HASELTON, C. J.

Plaintiff Pfizer Inc. (Pfizer[1]) appeals a general judgment, declaring that over 100 exhibits that Pfizer had produced during the course of an investigation by defendant Oregon Department of Justice (DOJ) concerning Pfizer's marketing of the medications Bextra and Celebrex, as well as an annotated complaint predicated on those exhibits, are not exempt from disclosure under the parties' confidentiality agreements. On appeal, Pfizer contends that the trial court erred in denying its motion for summary judgment and granting DOJ's cross-motion because the exhibits and annotated complaint are exempt from disclosure as "trade secrets," "confidential submissions," or "attorney work product" under the Oregon Public Records Law (OPRL), ORS 192.410 to 192.505,[2] and, for that reason, DOJ is obligated not to disclose them to third parties under the terms of the confidentiality agreements.

As amplified below, we conclude that the confidentiality agreements obligate DOJ to withhold the Pfizer- produced exhibits to the extent that they are exempt from disclosure under the OPRL. Proceeding from that premise, we further conclude as follows: One, the trial court erred in denying Pfizer's motion for summary judgment and in granting DOJ's cross-motion as to Exhibits 1-4, 7-9, 11, 13-16, 18-19, 21-40, 44-73, 75-94, 96-101, and 103. As to those documents, Pfizer was entitled to summary judgment because the declaration of its director, Gibney, established, without contradiction, that, as a matter of law, those exhibits are exempt as trade secrets pursuant to ORS 192.502(9)(a) of the OPRL in that their disclosure is "prohibited or restricted or otherwise made confidential or privileged under Oregon law," *viz.*, the Uniform Trade Secrets Act, ORS 646.461 to 646.475. And two, to the extent that the annotated complaint discloses information contained in those exhibits, it too is

---

[1] For ease of reference, the parties and the trial court used the term "Pfizer" to refer to Pfizer Inc. as well as one of its subsidiaries, Pharmacia Corporation. For ease of reference and unless otherwise noted, we do the same.

[2] Although the pertinent provisions of the OPRL have been amended numerous times since the parties entered into their confidentiality agreements, those amendments do not affect our analysis; accordingly, we refer to the current version of those provisions throughout this opinion.

concomitantly exempt from disclosure. As to the remaining exhibits—*viz.*, Exhibits 10, 12, 17, 20, 41-43, 74, 95, 102, and 104-109—we conclude that the trial court properly denied Pfizer's motion for summary judgment and granted DOJ's cross-motion because the "confidential submissions" exemption of the OPRL, ORS 192.502(4), is inapplicable as a matter of law. Finally, we conclude that, because DOJ is not contractually obligated to protect its own work product in the event that it is subject to a public records request, the annotated complaint and the compilation of exhibits in its entirety is not exempt from disclosure as "attorney work product." Accordingly, those parts of the annotated complaint that do not disclose the content of exhibits exempt from disclosure are not themselves exempt from disclosure. Accordingly, we reverse in part and affirm in part.

## I. FACTS AND PROCEDURAL HISTORY

To provide context, we begin with a general overview of the undisputed procedural facts. To the extent that resolution of issues on appeal requires that we augment those facts, we do so in the context of addressing the parties' particular contentions.

In 2003, DOJ led a multistate investigation to determine whether Pfizer Inc. and Pharmacia Corporation (Pharmacia), another drug company that Pfizer Inc. acquired in April of that year, were marketing the medications Bextra and Celebrex in violation of consumer protection laws, including Oregon's Unlawful Trade Practices Act (UTPA), ORS 646.605 to 646.652. One aspect of that investigation concerned whether Pfizer was marketing Bextra for off-label uses—that is, uses that had not been approved by the Food and Drug Administration.

Initially, DOJ did not issue an investigative demand for the exhibits at issue on appeal.[3] Instead, in June 2003,

---

[3] ORS 646.618(1) provides that a prosecuting attorney may, under certain circumstances, "execute in writing and cause to be served an investigative demand upon any person who is believed to have information, documentary material or physical evidence relevant to the alleged or suspected violation" of two provisions of the UTPA that describe unlawful practices. Further,

"[t]he investigative demand shall require such person, under oath or otherwise, to appear and testify, to answer written interrogatories, or to produce relevant documentary material or physical evidence for examination, at such

DOJ (on behalf of the Attorneys General of several states, including Oregon) entered into a detailed confidentiality agreement with Pharmacia that limited the disclosure of the exhibits that Pharmacia produced.

In November 2004, David Hart, the Oregon Senior Assistant Attorney General who led the investigation, notified Pfizer that the issuance of an investigative demand would occur "shortly," and he provided Pfizer with an unsigned copy of the demand that DOJ intended to issue. However, after Pfizer agreed to enter settlement negotiations and produce the requested documentation, DOJ agreed not to formally issue the investigative demand.

Then, in January 2005, the 2003 confidentiality agreement was amended to refer to Pfizer in addition to Pharmacia, but the substance of the agreement remained the same.[4] Generally, the agreements governed the disclosure of documents or written material that Pfizer designated as "confidential"—that is, documents or materials that "in Pfizer['s] * * * good faith view, [contained] proprietary or trade secret information." Specifically, the agreements provided that "any documents or other written material marked or designated by Pfizer * * * as containing 'Confidential' information, or summaries thereof, shall not be disclosed by the Attorneys' General offices to anyone other than" particular employees, consultants, and state and federal agencies under specified conditions.

With regard to disclosures to third parties, the agreements provided:

---

reasonable time and place as may be stated in the investigative demand, or to do any of the foregoing, concerning conduct of any trade or commerce which is the subject matter of the investigation."

*Id.* If the person on whom DOJ serves an investigative demand fails or refuses to obey it, the prosecuting attorney may request a court order to, among other things, "restrain the person from engaging in conduct of any aspect of the trade or commerce that is involved in the alleged or suspected violation[.]" ORS 646.626(1)(a).

[4] The parties attribute no significance to the fact that the original 2003 agreement referred only to Pharmacia, and neither do we. Further, because the substance of both agreements is the same, throughout this opinion, we take our quotations from the 2005 agreement.

"Nothing in the foregoing shall limit the ability of the Attorneys General to disclose 'Confidential' documents, materials, or written summaries thereof, to any third party, including without limitation a federal or state agency, pursuant to a subpoena or court order, and *the obligations of each Attorney General listed above under this confidentiality agreement are further subject to the provisions of each State's* respective data practices act, *public record act,* freedom of information act or similar state law regarding the maintenance and disclosure of documents and information supplied to such State's Attorney General."

(Emphasis added.) Further, the agreements provided that, if a state received a third-party request, it would "notify Pfizer * * * of the [request] as soon as is reasonably possible so that Pfizer * * * may seek a protective order" and would, generally, "provide Pfizer * * * with at least ten (10) business days' advance notice before complying with any Third Party Request for documents or material designated or marked as containing 'Confidential' information[.]"

The agreements did not prohibit the Attorneys General from using the produced information in litigation against Pfizer. However, they did require that the produced documents and materials be kept confidential so that Pfizer could attempt to obtain a protective order. For example, the agreements state:

"Nothing herein shall prevent any Attorney General from using, including in a filing with a court, such documents, so long as the documents are kept confidential until either the court rules on Pfizer's * * * request for a protective order, or the period of time which the Attorney General provided to Pfizer * * * for them to seek such order has expired, which shall be at least ten (10) business days unless a shorter period of time is required by state law."

Finally, the agreements provided that DOJ's obligations survive the conclusion of the investigation. Specifically, the agreements provide:

"[T]he obligations of confidentiality imposed by this agreement shall survive the conclusion of this investigation, to the extent permitted by applicable law, including any State's data practices, freedom of information, civil investigative demand act, or similar laws."

Pursuant to those confidentiality agreements, Pfizer produced, among other documents, the vast majority of the exhibits that are at issue here.[5]

Ultimately, on October 22, 2008, DOJ filed a complaint against Pfizer, alleging that, despite significant safety concerns, Pfizer had used a variety of practices to market and promote Bextra for the off-label uses of treating acute and surgical pain in violation of the UTPA.

On the same day that the complaint was filed, the trial court accepted the parties' stipulated general judgment, which was "made without trial or adjudication of any issue of fact or law or finding of liability of any kind." According to the terms of the judgment, Pfizer agreed to pay $60 million and to abide by injunctive terms that prohibited and required particular prospective conduct addressing the concerns raised during the investigation (*e.g.*, "Pfizer shall not make any written or oral claim that is false, misleading or deceptive regarding any FDA-approved Pfizer Product."). However, the stipulated judgment also provided:

> "Pfizer is entering into this Judgment solely for the purpose of settlement, *and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Pfizer expressly denies.* Pfizer does not admit any violation of the State Consumer Protection Laws set forth in footnote 1[, including the UTPA], and does not admit any wrongdoing that was or could have been alleged by any Attorney General before the date of the Judgment under those laws. No part of this Judgment, including its statements and commitments, shall constitute evidence of any liability, fault, or wrongdoing by Pfizer."

(Emphasis added.)

A few days after the stipulated judgment was accepted and DOJ issued a press release about the terms of its settlement with Pfizer, a California attorney, who

---

[5] DOJ eventually served an investigative demand on Pfizer on February 9, 2006. Our understanding is that all but two of the exhibits at issue on appeal were produced before that date.

represented a private plaintiff in unrelated litigation against Pfizer, requested disclosure under the OPRL of all documents produced by Pfizer during DOJ's investigation. Hart responded by e-mail. He suggested that the scope of the request be limited to (1) an "annotated complaint" that he had drafted before DOJ settled with Pfizer—a complaint that was qualitatively different from the complaint that DOJ had actually filed on October 22, 2008—and (2) the supporting exhibits for the annotated complaint.[6] Hart explained that much of the material covered in the annotated complaint and most of the supporting exhibits were "covered by the Confidentiality Agreements" and that he "could probably determine in short order which of these [exhibits] are not subject to a public records request." The California attorney agreed to limit the request to the annotated complaint and supporting exhibits.[7]

Consistently with the confidentiality agreements, DOJ informed Pfizer that the public records request had been made. Thereafter, Pfizer initiated this action for declaratory and injunctive relief, contending that the release of the annotated complaint and the supporting exhibits (with DOJ's proposed redactions) would be in violation of the confidentiality agreements because the annotated complaint and related exhibits (even as redacted by DOJ) were exempt from disclosure under the OPRL.

The parties filed cross-motions for summary judgment. Their competing contentions essentially centered on two overarching issues: *First*, do the confidentiality agreements obligate DOJ to withhold the annotated complaint and the exhibits to the extent that they are exempt from disclosure under the OPRL? And *second*, if they do, are the exhibits and annotated complaint exempt under the OPRL either as "trade secrets," "confidential submissions," or "attorney work product" as a matter of law?

---

[6] In particular, the annotated complaint, which is 36 pages long and contains 96 footnotes, cites to and quotes from the exhibits.

[7] Two reporters also requested disclosure of the annotated complaint and supporting exhibits under the OPRL.

The second of those questions implicated, in turn, four subsidiary questions concerning the applicability of particular exemptions under the OPRL to the exhibits and annotated complaint:

(1) Are the exhibits exempt as "trade secrets" under ORS 192.502(9)(a) because their disclosure is "prohibited or restricted or otherwise made confidential or privileged under Oregon law," *viz.*, the Uniform Trade Secrets Act?

(2) Are the exhibits exempt as "confidential submissions" under ORS 192.502(4), which exempts from disclosure "[i]nformation submitted to a public body in confidence and not otherwise required by law to be submitted, where such information should reasonably be considered confidential, the public body has obliged itself in good faith not to disclose the information, and when the public interest would suffer by the disclosure"?

(3) Is the annotated complaint exempt from disclosure to the extent that it is predicated on particular exhibits that are themselves exempt under the OPRL?

(4) Are the annotated complaint and the compilation of exhibits on which it is predicated exempt from disclosure under ORS 192.502(9)(a), which incorporates ORCP 36 B(3)'s limitations on the disclosure of "attorney work product"?

In moving for summary judgment, Pfizer submitted the declaration of its director, Gibney. In that declaration, Gibney explained the reasons that the exhibits qualified as trade secrets. DOJ, however, proffered no evidentiary submissions controverting the Gibney declaration.

Ultimately, the trial court concluded that, although the confidentiality agreements obligated DOJ to withhold the exhibits that are exempt from disclosure under the OPRL, the vast majority of the exhibits are not exempt. In detailed letter opinions, the court began by adopting the premise of Pfizer's position, that is, that "DOJ, in entering the Confidentiality Agreements, obliged itself to keep the disclosed information confidential, to the extent of the applicable law"—*viz.*, the OPRL. Specifically, the court explained:

"[D]isclosure of any [exhibits] would not per se violate the Agreements, as the Agreements are subject to [the OPRL].

If any [exhibits] are subject to disclosure under [the OPRL], there is no obligation of confidentiality. * * * If any [exhibit] would be exempt from disclosure, such exemption would be provided *under [the OPRL]*, not the [c]onfidentiality agreement[s]."

(Emphasis in original.)

In sum, the court concluded that, if the exhibits are not exempt from disclosure under the OPRL, DOJ is obligated to disclose them. Conversely, however, the court concluded that, if any exhibits are exempt under the OPRL, DOJ is obliged not to disclose them. Accordingly, the court's analysis turned to whether the exhibits and annotated complaint are exempt from disclosure under the OPRL.

The court concluded that the exhibits are not exempt under the OPRL as "trade secrets," relying on the two relevant statutory definitions of that term.[8] The court explained that, with the exception of two exhibits that are not at issue on appeal, 254 Or App at 155-56 n 9, the remaining exhibits

"do not contain lists, formulas, procedures, and the like that may be protected as a trade secret. Pfizer has not shown that such [exhibits] have only been circulated among a small number of employees, or that the information was little known outside Pfizer's business, or that competitors would gain a market advantage by disclosure. Pfizer simply offers broad allegations of harm without provid[ing] specific examples of injury. Pfizer has not met its burden to show good cause why the [exhibits] should not be disclosed."

As to the "confidential submissions" exemption, the trial court noted that (1) "the information and documents produced by Pfizer, including strategic documents, internal emails, call notes, and other internal documents, were 'of a nature which reasonably should be confidential'"; (2) "DOJ has obliged itself in good faith, not to disclose such documents"; and (3) "Pfizer submitted such information to

---

[8] At this point, it is sufficient to note that ORS 646.461(4) defines the term "trade secret" for purposes of the Uniform Trade Secrets Act, which, as noted, is incorporated into the OPRL through ORS 192.502(9)(a). The complete text of that provision is set out in our analysis below. 254 Or App at 160-61. In addition, ORS 192.501(2) defines the term for purposes of another OPRL exemption, which exempts "trade secrets" from disclosure, "unless the public interest requires disclosure in the particular instance."

the DOJ in confidence, as evidenced by the Confidentiality Agreements." Nevertheless, the court concluded that the "confidential submissions" exemption in ORS 192.502(4) is inapplicable for either of two independently sufficient reasons. First, the court determined that Pfizer's submissions did not satisfy the statutory requirement that, to qualify as an exempt "confidential submission," the information must "not otherwise [have been] required by law to be submitted." ORS 192.502(4). Rather, in the court's view, Pfizer's submissions were "required by law." That was so, the court reasoned, because "the informal [investigative demand], as well as the settlement negotiations, *** coerced Pfizer into handing over the [exhibits]" and, for that reason, "Pfizer did not voluntarily provide the DOJ with the [exhibits]."

As a further, and alternative, basis for deeming the "confidential submissions" exemption inapposite, the court determined that, contrary to the statutory requisite that "the public interest *** suffer by the disclosure," ORS 192.502(4), disclosure of the exhibits would not harm the public. In that regard, the court reasoned:

> "With respect to Pfizer's contention that disclosure would impede future investigations and that voluntary production would be deterred, the court finds this argument unpersuasive. It is not a burden for the DOJ to obtain a court order to compel discovery. Such court orders occur in the normal course of litigation. Moreover, there are many reasons that a business would cooperate with a government investigation for violations of the state's consumer protection laws, and disclosure here would not deter cooperation in the future.
>
> "In this case, public interest favors disclosure of these documents. The public has a substantial interest in learning about drug companies that market drugs for unapproved uses, for the main reason so that it can protect itself from such misconduct. Pfizer asserts that the DOJ has satisfied any public interest by filing its final complaint, posting the complaint on its website, distributing a press release announcing the filing, and holding a press conference announcing the settlement. ***
>
> "Oregon's public records law favor[s] disclosure. The public has a substantial interest in protecting itself from

illegal marketing practices of drug companies. The public also has an interest in assessing how the Attorney General is investigating and prosecuting drug companies for violations of consumer protection laws. As such, disclosure of such [exhibits] would not harm the public."

Having concluded that the "confidential submissions" exemption is inapplicable and that the exhibits are not exempt as "trade secrets," the court turned its attention to the annotated complaint. In particular, the court determined that the annotated complaint is not exempt as a trade secret because (1) "[t]he general content of the information ha[d] already been published and [was] widely available to the public"; (2) "[t]he footnotes cite or quote material that is published, or that the court has found not to be exempt under the trade secret exemption"; and (3) the complaint was prepared by DOJ for its use in the Pfizer litigation.

Finally, the trial court rejected Pfizer's contention that the annotated complaint and the compilation of exhibits are exempt from disclosure as "attorney work product" under ORS 192.502(9)(a), which incorporates the restriction concerning the discovery of "attorney work product" in ORCP 36 B(3). The court noted that ORCP 36 B(3) provides, in part, that "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Nevertheless, the court reasoned that

"[t]he work product doctrine under ORCP 36 B(3) is limited to the *discovery* of documents. Thus, ORCP 36 B(3) is inapplicable as neither party is seeking discovery of the Annotated Complaint. Moreover, [Pfizer] may not invoke the work product doctrine. Such an invocation can only be made by [DOJ], as the Annotated Complaint is derived from the mental impressions, conclusions, opinions and legal theories of the [DOJ] attorneys, not [Pfizer]."

(Emphasis in original.)

For all of those reasons, the trial court denied Pfizer's motion for summary judgment and allowed DOJ's cross-motion.[9] Before the entry of judgment, DOJ filed two motions that relate to the issues on appeal.

[9] To be precise, the trial court allowed Pfizer's motion and denied DOJ's cross-motion as to Exhibits 5 and 6 on the ground that they were exempt from disclosure

First, relying on *AFSCME v. DAS*, 150 Or App 87, 945 P2d 102 (1997), DOJ moved to dismiss the action, contending that the trial court lacked jurisdiction because the three individuals who had made the public records requests were necessary parties who had not been joined.[10] The court denied the motion, explaining that, unlike in *AFSCME*, in which the plaintiffs sought a declaration of rights *under the OPRL*, Pfizer sought a declaration of its rights *under the confidentiality agreements*—that is, contracts between Pfizer and DOJ to which the individuals who made the public records requests were neither parties nor third-party beneficiaries—and, for that reason, the individuals who made those requests need not be joined as parties.[11]

Second, DOJ moved to supplement the summary judgment record with "newly discovered evidence"—*viz.*, five documents obtained from the website of the United States Attorney's Office for the District of Massachusetts. In general terms, those documents demonstrated that, in 2009, the federal government, Pfizer Inc., and one of Pfizer Inc.'s subsidiaries, Pharmacia & Upjohn Company, Inc., had resolved criminal and civil claims arising from, among other things, the marketing of Bextra. Because those five documents pertain to, and provide context for, certain of the parties' arguments on appeal, we summarize their content at this point:

(1)   a federal criminal information alleging in a single count that Pharmacia & Upjohn Company, Inc., introduced into interstate commerce a misbranded drug—Bextra;

---

as trade secrets under the OPRL. DOJ does not cross-appeal to challenge that ruling. Thus, the only ruling on appeal is the trial court's denial of Pfizer's motion and allowance of DOJ's cross-motion and, for simplicity, we describe it as such.

[10] *See* ORS 28.110 ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."); *State ex rel Dewberry v. Kulongoski*, 220 Or App 345, 358, 187 P3d 220 (2008), *aff'd*, 346 Or 260, 210 P3d 884 (2009) ("ORS 28.110 requires, as a jurisdictional matter, that all parties who claim or have an interest that would be affected by the declaration must be parties to the declaratory judgment action." (Emphasis omitted.)).

[11] In a single sentence in its answering brief on appeal, DOJ requests that we "remand with instructions to dismiss for lack of jurisdiction." Nevertheless, we agree with the trial court's reasoning in denying DOJ's motion to dismiss and do not discuss this jurisdictional issue further.

(2) a federal plea agreement in which Pharmacia & Upjohn Company, Inc., agreed to plead guilty to the crime alleged in the information and to pay a fine of $1.195 billion dollars and to a criminal forfeiture of $105 million;

(3) a settlement agreement between the United States and Pfizer Inc. resolving, without admission of liability or wrongdoing, various civil and administrative claims concerning, among other things, Pfizer Inc.'s promotion of Bextra for off-label uses;

(4) a "side letter agreement" between the United States and Pfizer Inc. providing as pertinent that "[t]he United States hereby declines prosecution of Pfizer Inc or any of its subsidiaries (other than Pharmacia & Upjohn Company, Inc as set forth in the Information [described above]) for conduct by or attributable to Pfizer Inc or any of its subsidiaries that[,]" among other things, "falls within the scope of the Information to which Pharmacia & Upjohn Company, Inc., is pleading guilty"; and

(5) a press release from the United States Department of Justice announcing "the largest health care fraud settlement in [its] history * * * to resolve criminal and civil liability arising from the illegal promotion of certain pharmaceutical products."

The trial court granted DOJ's motion to supplement the record.

Ultimately, the trial court entered a general judgment declaring, as pertinent, that "[t]he Annotated Complaint prepared by the DOJ, and [Pfizer's] Exhibit[s] 1 to 4 and 7 to 109 are not exempt from disclosure under the Confidentiality Agreements between the parties or under ORS 192.501(2), 192.502(4), or 192.502(9) of the [OPRL]." Pfizer appeals.

## II. ANALYSIS

On appeal, Pfizer assigns error both to the trial court's denial of its summary judgment motion and to the allowance of DOJ's cross-motion. In *Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002), we described the operative standard of review:

"[Where] both the granting of one motion and the denial of the other are assigned as error, then both are subject

to review. Each party that moves for summary judgment has the burden of demonstrating that there are no material issues of fact and that the movant is entitled to judgment as a matter of law. We review the record for each motion in the light most favorable to the party opposing it."

(Citations omitted.)

In support of their respective positions on appeal, the parties raise the same contentions that they raised in the trial court concerning (1) whether the confidentiality agreements obligate DOJ to withhold the annotated complaint and the exhibits to the extent that they are exempt from disclosure under the OPRL; and (2) if they do, whether, as a matter of law, the exhibits and annotated complaint are exempt under the OPRL. We address each contention in turn.

A. *Obligation Imposed by Confidentiality Agreements*

We conclude, as did the trial court, that the confidentiality agreements obligate DOJ to withhold the Pfizer- produced exhibits to the extent that they are exempt from disclosure under the OPRL. That conclusion necessarily follows from the text of the agreements. *See Shogun's Gallery, Inc. v. Merrill*, 229 Or App 137, 145, 210 P3d 920 (2009) (in interpreting "a contractual provision, we first examine the text of the disputed provision in context; if the text is clear, the analysis ends there").

As noted above, 254 Or App at 148, the agreements provide that "any documents or other written material marked or designated by Pfizer * * * as containing 'Confidential' information, or summaries thereof, shall not be disclosed by [DOJ] to anyone other than" particular employees, consultants, and state and federal agencies under specified conditions. Significantly, although the agreements allow DOJ to disclose the Pfizer-produced documents or materials "pursuant to a subpoena or court order," the agreements specify that DOJ's obligations to withhold the materials that Pfizer produced "are further subject to the provisions of each State's * * * public record act."

In sum, the confidentiality agreements limit DOJ's ability to disclose the exhibits that Pfizer had produced. Except for certain individuals and entities, the agreements

prohibit DOJ from disclosing those exhibits "to anyone" in the absence of a subpoena or court order. Nevertheless, that obligation is "further subject to" the OPRL. In other words, if the exhibits are not exempt from disclosure under the OPRL, DOJ is obligated to disclose them; however, if any exhibits are exempt under the OPRL, DOJ is obligated not to disclose them.

DOJ remonstrates, nevertheless, that such an understanding of the agreements is too broad and that it did not agree to apply exemptions in the OPRL other than those pertaining to trade secrets. That contention is predicated on DOJ's understanding that "the agreements expressly provide that the only documents that were to be designated as 'confidential' by Pfizer were trade secrets." However, contrary to DOJ's understanding, the agreements provide that confidential documents are those that contained "*proprietary or* trade secret information." (Emphasis added.) That is, the agreements provide for protection of "proprietary" information beyond "trade secrets." Thus, DOJ's contention that the agreements obligate it to apply only the OPRL exemptions related to trade secrets is unavailing.

B.  *Exemption of Exhibits and Annotated Complaint Under the OPRL*

Having concluded that the confidentiality agreements obligate DOJ to withhold the Pfizer-produced exhibits to the extent that they are exempt from disclosure under the OPRL, we turn to the remaining overarching issue in this case. In particular, we must determine whether, as a matter of law, the exhibits and annotated complaint are exempt from disclosure under the OPRL.

Three principles inform our analysis of that issue. *First*, because the parties' contractual obligations in this case depend on the effect of incorporated statutes (*e.g.*, the exemptions in the OPRL), we apply to those statutes, where necessary, the rules of statutory interpretation set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), as amplified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). *See Lenon v. PERB*, 228 Or App 20, 25, 206 P3d 1165, *rev den*, 347 Or 365 (2009) (so stating).

*Second*, although, ordinarily, it is the public body that "has the burden of sustaining an asserted exemption from disclosure" under the OPRL, *In Defense of Animals v. OHSU*, 199 Or App 160, 172, 112 P3d 336 (2005), that construct is inapplicable in this case. Here, Pfizer is contending that the confidentiality agreements prohibit disclosure of the exhibits and annotated complaint because they are exempt from disclosure under the OPRL. Under such circumstances, Pfizer, which is resisting disclosure, has the burden of demonstrating the applicability of each OPRL exemption on which it relies.

*Third*, as noted, Pfizer contends that the exhibits and annotated complaint are exempt under the OPRL as either "trade secrets," "confidential submissions," or "attorney work product"—or some permutation of those exemptions. In analyzing those issues, if we conclude that Pfizer is entitled to summary judgment because one of those exemptions applies to particular exhibits, "we need not consider the applicability of other exemptions" to those exhibits. *Id.* With those principles in mind, we turn to whether some or all of the exhibits are exempt from disclosure under the OPRL as trade secrets.

1. *Trade Secrets Exemption Under ORS 192.502(9)(a) and the Uniform Trade Secrets Act*

Pfizer's primary contention on appeal is that the exhibits are exempt as trade secrets under the OPRL. In support of that contention, Pfizer relies on ORS 192.502(9)(a), which exempts from disclosure under the OPRL "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law." According to Pfizer, "[d]isclosure of [its] trade secrets would constitute a 'prohibited disclosure' under ORS 192.502(9)(a) because it would be a 'misappropriation' of trade secrets, which is prohibited by the [Uniform Trade Secrets Act]."

As in the trial court, the parties' competing contentions on appeal concern whether the exhibits are trade secrets as defined in the Uniform Trade Secrets Act, specifically, ORS 646.461(4). That statute provides:

"'Trade secret' means information, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that:

"(a) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

"(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

In *Kaib's Roving R.PH. Agency, Inc. v. Smith*, 237 Or App 96, 103, 239 P3d 247 (2010), we explained that, "[t]o constitute a trade secret under ORS 646.461(4), information (including compilations) must both (1) gain value because it is not generally known and (2) be the subject of reasonable efforts to maintain that secrecy." We further noted that, generally,

"[e]ach of those determinations is made, not by reference to legal principles, but on the basis of the historical facts and circumstances presented: Is the information at issue generally known within the relevant community? Is it more valuable by virtue of not being generally known? What efforts were made to keep it secret? Were those efforts reasonable? *Et cetera*. The definition set forth in the statute itself therefore necessarily implies that whether information is or is not a trade secret is a question of fact. If facts and circumstances are presented to establish that the information derives economic value from not being generally known and is subject to reasonable efforts to maintain its secrecy, then the information is a trade secret within the meaning of the statute."

*Id.* at 103.[12]

---

[12] *See also Citizens' Utility Board v. Public Utility Commission*, 128 Or App 650, 658-59, 877 P2d 116, *rev den*, 320 Or 272 (1994) ("Courts traditionally examine six factors in determining whether information constitutes a trade secret: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to the business or its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.").

Further, in contexts in which a party seeks to prohibit disclosure of information as a trade secret, we have held that

"[t]he party must also establish good cause for the protective order by demonstrating that disclosure will work a clearly defined and serious injury. Broad allegations of harm unsubstantiated by specific examples or articulated reasoning do not satisfy the good cause requirement. The harm must be significant, not a mere trifle."

*Citizens' Utility Board v. Public Utility Commission*, 128 Or App 650, 658, 877 P2d 116, *rev den*, 320 Or 272 (1994) (internal quotation marks and citations omitted).

For its part, Pfizer contends that the exhibits are trade secrets as a matter of law. In support of that contention, Pfizer relies on the declaration of a Pfizer director, Gibney, explaining that (1) Pfizer invested substantial time and money in creating the exhibits; (2) Pfizer derives economic value from the fact that the information in the exhibits is not generally known and has taken efforts to maintain its confidentiality; and (3) disclosure would allow Pfizer's competitors to have access to the information and to benefit from Pfizer's substantial investments in developing it.

Further, in separate paragraphs, the declaration identifies categories of exhibits (*e.g.*, executive management committee meeting agendas and presentations, strategic operating plan, and study protocols and final study reports). Significantly, with regard to the exhibits in each category, Gibney explains in greater detail the type of information contained in the exhibits and the reasons that it qualifies for trade secret protection.[13]

Invoking the Gibney declaration and relying on ORCP 47 D,[14] Pfizer further contends that,

---

[13] For tautologically obvious reasons, we do not recount those averments in particular detail.

[14] ORCP 47 D provides, in part:

"When a motion for summary judgment is made and supported as provided in this rule[,] an adverse party may not rest upon the mere allegations or denials of that party's pleading, but the adverse party's response, by affidavits, declarations or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If the adverse party does not so respond, the court shall grant the motion if appropriate."

"[i]n opposing Pfizer's motion for summary judgment, [DOJ] offered no evidence to dispute the facts set out in the Gibney Declaration. If [DOJ] wanted to challenge Mr. Gibney's factual assertions, it could easily have sought discovery from Pfizer, including the deposition of Mr. Gibney. It also could have attempted to submit a factual affidavit by a competent witness challenging Mr. Gibney's sworn statements regarding Pfizer's investment in the creation and the maintenance of the protected material. Instead, [DOJ] to leave the Gibney Declaration unchallenged by any evidentiary material and simply filed its own cross-motion for summary judgment."

(Citations omitted.)

In response, DOJ contends that Pfizer's reliance on the Gibney declaration is misplaced for three reasons. We address each of those contentions in turn.

First, DOJ contends that "uncontroverted or not, the statements in the [Gibney declaration] did not necessarily establish that the materials are trade secrets." In other words, DOJ contends that the declaration simply did not demonstrate that the exhibits qualified as "trade secrets" under the legal definition of that term.

However, as we explained in *Kaib's Roving R.PH. Agency, Inc.*, information constitutes a trade secret for purposes of ORS 646.461(4) if it "(1) gain[s] value because it is not generally known and (2) [is] the subject of reasonable efforts to maintain that secrecy." 237 Or App at 103. Gibney's declaration in this case demonstrated both of those requirements. Further, as required by *Citizens' Utility Board*, Gibney adequately described the potential harm that would result from the release of the exhibits. Thus, the Gibney declaration was legally sufficient to establish the availability of the "trade secrets" exemption.

Second, DOJ contends that "Gibney's opinion was belied by the content of the [exhibits] themselves, in the context of the circumstances of the case." Having reviewed each of the exhibits (as redacted by DOJ)—and assuming that DOJ's unamplified use of "belie" embodies an assertion that the content of various (unspecified) exhibits

is patently irreconcilable with the averments of the Gibney declaration—we reject DOJ's contention without further discussion.

Third, DOJ contends that it "*did* demonstrate that Gibney's statements were immaterial by showing that the information had already been made public or that similar information was readily available." (Emphasis in original.) In support of that contention, DOJ points to its summary judgment submissions—namely, the October 2008 state documents (*i.e.*, the UTPA complaint against Pfizer, the stipulated judgment, and DOJ's press release) described above, 254 Or App at 150-51, and the 2009 federal documents (*i.e.*, the federal information against Pharmacia & Upjohn Company, Inc., and its plea agreement, the civil settlement and side letter agreement with Pfizer Inc., and the federal government's press release) described above, 254 Or App at 156-57.

DOJ's contention in that regard partakes of the following syllogism:

(a) The October 2008 complaint that DOJ filed against Pfizer and the corresponding stipulated judgment, as well as DOJ's press release describing Pfizer's conduct in marketing Bextra for off-label uses, are publicly available.

(b) The 2009 federal information against Pharmacia & Upjohn Company, Inc., and its plea agreement, the civil settlement and side letter agreement with Pfizer Inc., and the federal government's press release are publicly available.

(c) The exhibits at issue on appeal contain examples of the conduct described in those publicly available documents.

(d) Therefore, the information in the exhibits has essentially been made public and is generally available.

The success of that syllogism depends on the correctness of DOJ's predicate premise that the exhibits are nothing more than examples of conduct described in the publicly available documents to which it refers. For the following reasons, we conclude that that premise is incorrect as to the great majority of the exhibits.

Again, we have reviewed each exhibit at issue on appeal. With regard to Exhibits 17, 20, 41-43, 74, 95, 102, and 104-109, we agree with DOJ that the information

therein is publicly available in the sources to which DOJ refers. For example, the core content of some of those exhibits was reproduced—sometimes verbatim—in the federal information. Given that circumstance, Exhibits 17, 20, 41-43, 74, 95, 102, and 104-109 contain nothing more than has been publicly disclosed.[15]

That is not the case, however, with regard to the remainder of the exhibits. Even as redacted, those exhibits reveal more than generic examples of conduct. In other words, the specific, underlying details in those exhibits have not been revealed by the publicly available sources on which DOJ relies—and it is *that* underlying detail that Pfizer contends is a trade secret. Accordingly, as to Exhibits 1-4, 7-9, 11, 13-16, 18-19, 21-40, 44-73, 75-94, 96-101, and 103, we reject DOJ's contention that the "information had already been made public or that similar information was readily available."[16]

Nevertheless, in a further attempt to demonstrate that the exhibits are not exempt under the OPRL as trade secrets, DOJ raises two additional contentions. *First,* DOJ essentially contends that the exhibits do not contain information that "gain[s] value because it is not generally known." *Kaib's Roving R.PH. Agency, Inc.,* 237 Or App at 103. To that end, DOJ specifically asserts that

> "[t]he information is old and of no value to a competitor. The market to which these [exhibits] relate no longer exists.[17]

[15] Relatedly, after oral argument, DOJ filed a notice of probable mootness, asserting that Exhibits 10 and 12 had been quoted in a *New York Times* article and posted on the *New York Times'* website. In response, Pfizer acknowledged that, "[i]n light of their release to the public," we "need not consider further the application of the trade secrets and confidential submissions exemptions to those two protected [exhibits]." We accept Pfizer's acknowledgement.

[16] For similar reasons, we also reject DOJ's contention that, because information about other drug companies' marketing strategies is widely available on the Internet, the exhibits at issue here are simply examples of the publicly available strategies employed by other companies. That other companies may—or may not—employ similar marketing strategies as a general matter does not contradict Pfizer's assertion, as substantiated without contradiction by the Gibney declaration, that the particulars of how Pfizer implemented its marketing strategy are not publicly known or could be of value to its competitors.

[17] In that regard, DOJ's October 2008 press release states that, "[d]ue to safety concerns, in 2004 and 2005 respectively, Vioxx"—a drug produced by a competitor that like Bextra and Celebrex was "designed to reduce pain and inflammation

> The [exhibits] relate to an illegal and heavily penalized marketing scheme that no competitor would want to emulate. And, the wealth of substantially similar documents that are publicly available show that whatever insights a competitor might somehow discern could easily be 'acquired or duplicated' without access to these [exhibits]."

However, in the face of the Gibney declaration—which established the availability of the trade secrets exemption—DOJ failed to offer any factual submission in support of those bare assertions. For that reason, we reject them without further discussion.

Second, DOJ also contends that "[i]llegal conduct is not a trade secret." We understand that contention to be predicated on DOJ's understanding that "Pfizer agreed to plead guilty to the charges in the [federal] Information." Whatever the merits of DOJ's contention—an issue about which we express no opinion—its predicate understanding of the federal plea agreement is incorrect. As noted above, 254 Or App at 156-57, Pharmacia & Upjohn Company, Inc., agreed to plead guilty to criminal conduct alleged in the federal information, and the side letter agreement states that the federal government "declines prosecution of Pfizer Inc or any of its subsidiaries (other than Pharmacia & Upjohn Company, Inc as set forth in the Information) for conduct by or attributable to Pfizer Inc or any of its subsidiaries that[,]" among other things, "falls within the scope of the Information to which Pharmacia & Upjohn Company, Inc., is pleading guilty."

Thus, as a matter of law, the trade secrets exemption applies to Exhibits 1-4, 7-9, 11, 13-16, 18-19, 21-40, 44-73, 75-94, 96-101, and 103. Accordingly, our inquiry reduces to whether Exhibits 17, 20, 41-43, 74, 95, 102, and 104-109 —which are not exempt from disclosure as trade secrets under ORS 192.502(9)(a) and the Uniform Trade Secrets Act because their core content has been publicly disclosed— are nevertheless exempt under some other provision of the

---

without the negative [gastrointestinal] side effects of traditional [nonsteroidal anti-inflammatory drugs]" such as "Ibuprofen (Advil®) and Naproxen (Aleve®)"— and "Bextra were withdrawn from the market place and in 2005 [the Food and Drug Administration] required a 'black box' safety warning" for Celebrex, which "denotes the serious risk of adverse effects from the drug."

OPRL.[18] Specifically, we turn to whether those exhibits are exempt from disclosure as "confidential submissions" under another provision of the OPRL—*viz.*, ORS 192.502(4).

### 2. *Confidential Submissions Exemption Under ORS 192.502(4)*

ORS 192.502(4) exempts from disclosure

"[i]nformation submitted to a public body in confidence and not otherwise required by law to be submitted, where such information should reasonably be considered confidential, the public body has obliged itself in good faith not to disclose the information, and when the public interest would suffer by the disclosure."

The trial court determined that the exemption is inapplicable both because Pfizer had been required by law to produce the exhibits and because the public interest would not suffer by the disclosure. On appeal, Pfizer contends that the court erred in both respects.

We need not address Pfizer's contentions in that regard because DOJ, as an alternative basis for affirmance, contends that the confidential submissions exemption is inapplicable as a matter of law because, contrary to the trial court's determination, those exhibits are not of a nature that "should reasonably be considered confidential." In particular, DOJ notes that "[m]uch of the information has been disclosed publicly[.]"

As previously explained, 254 Or App at 164-65, Exhibits 17, 20, 41-43, 74, 95, 102, and 104-109 are not exempt as trade secrets because their core content has been publicly disclosed. Given the circumstances of this case— including Pfizer's acknowledgement that Exhibits 10 and 12, which had been posted on the *New York Times*' website, are no longer exempt under the confidential submissions

---

[18] Pfizer also contends that those exhibits are exempt from disclosure under ORS 192.501(2), which exempts trade secrets "unless the public interest requires disclosure in the particular instance." As explained above, 254 Or App at 164-65, the categorical exemption for trade secrets in ORS 192.502(9)(a) and the Uniform Trade Secrets Act did not apply as a matter of law to Exhibits 17, 20, 41-43, 74, 95, 102, and 104-109. For the same reasons, we reach the same conclusion under ORS 192.501(2).

exemption, 254 Or App at 165 n 15—we conclude that, in addition to Exhibits 10 and 12, Exhibits 17, 20, 41-43, 74, 95, 102, and 104-109 are not exempt under the confidential submissions exemption as a matter of law.

3. *Exemption of Annotated Complaint Because It Discloses Exhibits That Are Exempt Under OPRL*

Having considered whether the exhibits are exempt under the OPRL as "trade secrets" or "confidential submissions," we have ultimately concluded that, as a matter of law, Exhibits 1-4, 7-9, 11, 13-16, 18-19, 21-40, 44-73, 75-94, 96-101, and 103 are exempt from disclosure as trade secrets. Thus, to the extent that the annotated complaint discloses information contained in those exhibits, it too is exempt from disclosure. To hold otherwise would permit disclosure of exhibits exempt as trade secrets under the OPRL contrary to the parties' confidentiality agreements.

4. *Exemption of Annotated Complaint and Exhibits Under ORS 192.502(9)(a) and ORCP 36 B(3) Restricting Disclosure of Attorney Work Product*

Finally, as did the trial court, we reject Pfizer's contention that the annotated complaint and the compilation of exhibits referred to therein are exempt from disclosure under the OPRL because DOJ "had contractually obligated itself under the Confidentiality Agreements to protect its work product if such materials would otherwise be responsive to a public records request." In support of that contention, Pfizer relies on ORS 192.502(9)(a), which exempts from disclosure "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law." According to Pfizer, that exemption

"shields from disclosure in response to a public records request attorney work product materials, the disclosure of which is restricted under ORCP 36 B(3) ('[T]he Court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.')."

Pfizer's contention, however, is fundamentally flawed. That is so because, as explained above, 254 Or

App at 158-59, the confidentiality agreements limit DOJ's ability to disclose the exhibits that Pfizer itself *produced.* In other words, contrary to Pfizer's contention, DOJ is not contractually obligated to protect its own work product in the event that it is subject to a public records request. Thus, under the circumstances of this case, the trial court did not err in concluding that the annotated complaint and the compilation of exhibits to which it referred are not exempt from disclosure as "attorney work product."

## III. CONCLUSION

In sum and for the reasons that we have explained, the confidentiality agreements obligate DOJ to withhold the Pfizer-produced exhibits to the extent that they are exempt from disclosure under the OPRL. We further conclude as follows:

(1)   As a matter of law, Exhibits 1-4, 7-9, 11, 13-16, 18-19, 21-40, 44-73, 75-94, 96-101, and 103 are exempt as "trade secrets" pursuant to ORS 192.502(9)(a) of the OPRL because their disclosure is "prohibited or restricted or otherwise made confidential or privileged under Oregon law," *viz.*, the Uniform Trade Secrets Act.

(2)   To the extent that the annotated complaint discloses information contained in those exhibits, it too is exempt from disclosure.

(3)   As a matter of law, Exhibits 10, 12, 17, 20, 41-43, 74, 95, 102, and 104-109 are not exempt under the OPRL as "confidential submissions."

(4)   The annotated complaint and compilation of exhibits in its entirety is not exempt under the OPRL as "attorney work product." Accordingly, as previously noted, those parts of the annotated complaint that do not disclose the content of exhibits exempt from disclosure are not themselves exempt from disclosure.

Accordingly, we reverse, in part, the trial court's denial of Pfizer's motion for summary judgment and allowance of DOJ's cross-motion and remand for the trial court to issue a declaration consistent with this opinion.

Reversed in part and remanded for proceedings consistent with this opinion.